**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DISTRICT**

| | | |
|---|---|---|
| **BENNY NEWTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | **2:07-cv-00433-MHT** |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | |
| **CONSERVATION AND NATURAL** | ) | |
| **RESOURCES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

_____

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**TO STRIKE PLAINTIFF'S JURY DEMAND AND CLAIMS**
**FOR COMPENSATORY AND PUNITIVE DAMAGES**
_____

**COME NOW** the Defendants and respectfully move the Court to dismiss, or in the alternative, to strike Plaintiff's jury demand and claims for compensatory and punitive damages.

This motion is based on the pleadings heretofore filed in this action and in the related case of *In re: Employment Discrimination Litigation Against the State of Alabama*, Civil Action No. 94-T-356-N (hereinafter, the "*Crum* litigation"), as well as the memorandum of law and exhibits filed contemporaneously herewith. In further support of this motion, Defendants State as follows:

1.     As set out more fully in Defendants' Memorandum of Law submitted contemporaneously herewith, the Court should strike Plaintiff Newton's jury demand and dismiss his claims for compensatory and punitive damages because he previously waived under oath his right to a jury trial and his right to seek compensatory and punitive damages for the express purpose of maintaining the putative class in the related case of *In re: Employment*

1

*Discrimination Litigation Against the State of Alabama*, Civil Action No. 94-T-356-N (hereinafter, the "*Crum* litigation").

2.      In particular, Newton, acting in his capacity as a named representative of the putative class in the related *Crum* litigation, affirmatively waived the right to trial by jury and all claims for compensatory and punitive damages for the express purpose of maintaining the putative class.  Both Defendants and the *Crum* court relied on Newton's prior position.  In fact, the *Crum* court entered orders (over the Defendants' objections) granting the motions of the *Crum* litigants to withdraw their jury demands and their claims for compensatory and punitive damages.

3.      Additionally, during the class discovery phase of the *Crum* litigation, Newton repeatedly and unequivocally testified under oath that he ratified that decision of his counsel to waive his rights and the rights of the putative class members to a trial by jury and to seek compensatory and punitive damages in that action; a decision that was essential to preservation of the putative class.

4.      Nevertheless, Newton now asks the Court to ignore his deliberate and knowing waiver decision in the related *Crum* litigation because it no longer serves his personal interests. This is precisely the type of strategic manipulation the doctrine of judicial estoppel was developed to prevent.

5.      Plaintiff Newton's attempt to resurrect a jury demand and his claims for compensatory and punitive damages in this related action are barred by the doctrine of judicial estoppel, waiver and the law of the case.  To hold otherwise would make a mockery of the judicial process by allowing Newton to play fast and loose with the courts to suit the exigencies of self interest.

**WHEREFORE. PREMISES CONSIDERED**, the Court should dismiss or, in the alternative, strike Plaintiff Newton's jury demand and claims for compensatory and punitive damages.

Respectfully submitted,

 /s/ Christopher W. Weller
CHRISTOPHER W. WELLER (WEL020)
CONSTANCE S. BARKER (BAR099)
MAI LAN F. ISLER (*pro hac vice*)
Attorneys for Defendants

**OF COUNSEL**

CAPELL & HOWARD, P.C.
P. O. Box 2069
Montgomery, AL  36102-2069
334/241-8000

/s/ ALICE ANN BYRNE
ALICE ANN BYRNE (BYR015)
Attorney for Defendants
State Personnel Department and
Jackie Graham, Director

Address of Counsel :

STATE PERSONNEL DEPARTMENT
Legal Division
Folsom Administrative Building
64 N. Union Street, Ste. 316
Montgomery, AL  36103
334/242-3451

3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document has been electronically filed using the CM/ECF system on this the 10th day of March, 2008.

 /s/ Christopher W. Weller

OF COUNSEL

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DISTRICT**

| | | |
|---|---|---|
| **BENNY NEWTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | **2:07-cv-00433-MHT** |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | |
| **CONSERVATION AND NATURAL** | ) | |
| **RESOURCES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

_____

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFF'S JURY
DEMAND AND CLAIMS FOR COMPENSATORY AND PUNITIVE DAMAGES**
_____

**COME NOW** Defendants and submit the following Memorandum of Law in Support of Defendants' Motion to Dismiss or, in the Alternative, to Strike Plaintiff's Jury Demand and Claims for Compensatory and Punitive Damages.

## I.    INTRODUCTION

As will be established herein, the Court should strike Plaintiff Newton's jury demand and dismiss his claims for compensatory and punitive damages because they are contrary to the position he previously adopted under oath in related litigation.  In particular, Newton, acting in his capacity as a named representative of the putative class in the related case styled *In re: Employment Discrimination Litigation Against the State of Alabama*, Civil Action No. 94-T-356-N (hereinafter, the "*Crum* litigation"), affirmatively waived the right to trial by jury and all claims for compensatory and punitive damages for the express purpose of maintaining the putative class.  Both Defendants and the *Crum* court relied on Newton's prior position.  In fact,

1

over the objections of Defendants, the *Crum* court entered orders granting the motions of the *Crum* litigants to withdraw their jury demand and their claims for compensatory and punitive damages. Additionally, during the class discovery phase of the *Crum* litigation, Newton repeatedly and unequivocally testified under oath that he knowingly waived his right and the rights of the putative class members to a trial by jury and to seek compensatory and punitive damages; a decision that was essential to preservation of the putative class. Nevertheless, Newton now asks the Court to ignore his deliberate waiver decisions in *Crum* because it no longer serves his personal interests in the instant litigation. This is precisely the type of strategic manipulation the doctrine of judicial estoppel was developed to prevent.

As will be set out more fully below, Plaintiff Newton's attempt to reassert his jury demand and his claims for compensatory and punitive damages in this related action are barred by the doctrine of judicial estoppel, waiver and the law of the case. To hold otherwise would make a mockery of the judicial process by allowing Newton to play fast and loose with the courts to suit the exigencies of self interest. For these reasons, the Court should dismiss Plaintiff's jury demand and compensatory and punitive damages claims.

## II.     RELEVANT PROCEDURAL HISTORY

### A.     THE *CRUM* LITIGATION

This case arises out of and is related to the *Crum* litigation, *i.e., In re: Employment Discrimination Litigation Against the State of Alabama*, Civil Action No. 94-T-356-N. Therefore, it is critical to review the history of the jury demand and monetary damages issues in the five cases that eventually became the *Crum* litigation. The *Crum* litigation arose out of the consolidation of five separate race-discrimination cases brought by African-American plaintiffs against the State of Alabama and several of its boards, departments and agencies. The five cases

2

included *Yvonne C. Jennings v. State of Alabama Department of Education, et. al*., CA No. 93-T-647-N; *Robert L. Smith v. State of Alabama Personnel Dept., et al. ("Smith I")*, CA No. 91-T-1414-N; *Robert L. Smith v. Halycon Vance Ballard, et al. ("Smith II")*, CA No. 92-T-1609-N; *Ellen Tolbert, et al. v. State of Alabama, et al.*, CA No. 93-T-0287-N; and *Eugene Crum, Jr. v. Dr. Halycon Vance Ballard, et al.*, CA No. 93-T-423-N. Some of the cases were putative class actions in which the plaintiffs sought relief on behalf of themselves and all other persons similarly situated who were or are employed, or who may be employed in the future by the Defendants.

In each of these cases, the named plaintiffs initially demanded jury trials and sought compensatory and/or punitive damages. However, each plaintiff and/or the putative class representative subsequently amended their respective complaints to limit their claims to equitable relief, and they formally moved to strike their initial jury demands.[1] In fact, in the briefs submitted by the plaintiffs in support of their respective motions to strike their jury claims and claims for compensatory and punitive damages, the plaintiffs specifically and unequivocally waived their right to trial by jury and to seek compensatory and punitive damages to further the interests of the putative classes and because they believed that equitable remedies under Title VII provided sufficient redress for wrongs allegedly committed by Defendants. For example, in seeking to dismiss the compensatory and punitive damage claims in *Smith I and II*, Robert Smith represented to the Court as follows:

---

[1] *See Tolbert* Amended Complaints (*Tolbert* Doc. Nos. 3, 7); *Tolbert* Motion to Strike Jury Demand (*Tolbert* Doc. No. 30) (deleting request for compensatory and punitive damages); *Jennings* Motion to Strike Jury Demand & Brief (*Jennings*, Doc. Nos. 6, 10); *Jennings* Amendment to Compl. (*Jennings* Doc. No. 11) (deleting claims for compensatory and punitive damages and other legal relief); *Jennings* Brief in Support of Motion to Amend Compl. (*Jennings* Doc. No. 9); *Smith* Motion to Strike Jury Demand and Supporting Brief (*Smith* Doc. Nos. 40, 41); *Crum* Motion to Strike Jury Demand (*Crum* PC Doc. No. 12); *Crum* Motion to Amend Compl. (*Crum* PC Doc. No. 13) (deleting requests for compensatory and punitive damages and other legal relief).

3

> Smith's central interest in this case is to achieve systemic remedy
> eliminating employment discrimination and the effects of that
> discrimination among Alabama agencies. Smith feels that he can
> best represent a class of similarly situated individuals by pursuing
> equitable remedies to the exclusion of legal remedies. Second,
> thought (sic) Smith certainly desires that he and the class he
> represents be made whole, it is not Smith's desire to raid the State
> Treasury. After careful consideration, Smith has concluded that
> the equitable relief available under Title VII offers sufficient
> redress for wrongs visited upon him by Defendants.[2]

*Smith* Brief in Support of Motion to Amend Compl., *et seq*. (*Smith* Doc. No. 41) at 1-2. The

named plaintiffs in *Crum* and *Jennings* filed similar briefs containing the same verbatim

language. *See Jennings* Brief in Support of Motion to Amend Compl., *et seq*. (*Jennings,* Doc.

No. 9) at 1-2[3]; *Crum* Brief in Support of Motion to Amend Compl., *et seq*. (*Crum* PC Doc. No.

27) at 1-2; *see also Crum* Letter Brief (stating that "Crum desires to amend his complaint and

eliminate all legal, as opposed to equitable, claims") (*Crum* PC Doc. No. 28).[4]

After extensive briefing in each case, this Court granted the motions of the respective

plaintiffs to strike their jury claims and recognized that they specifically had limited their claims

for relief to purely equitable remedies, *e.g.,* injunctive relief, back pay, *et seq. See e.g.*, *Tolbert*

Order, (*Tolbert* Doc. No. 44); *Crum* Order, (*Crum* PC Doc. No. 37); *Smith I & II* Order, (*Smith*

II Doc. No. 52); *Jennings* Order (*Jennings* Doc. No. 10).

On March 24, 1994, the Court contemporaneously ordered the consolidation of all five

cases into a single action styled *In re: Employment Discrimination Litigation Against the State of*

*Alabama*, Civil Action No. 94-T-356-N. *See Crum* Consolidation Order (*Crum* PC Doc.

---

[2]  Notwithstanding the *Crum* Plaintiffs' alleged altruistic motives, it cannot be seriously disputed that the primary motive for the plaintiffs' abandonment of their jury demands and claims for compensatory and punitive damages was the desire to preserve a possible Rule 23(b)(2) class.
[3]  In *Tolbert*, the Plaintiffs not only moved to strike their own jury claims, but also they moved to strike the State Defendants' jury demand. *See Tolbert* (Doc. Nos. 30, 41, 42, 44).
[4]  All references to docket numbers for entries in the *Crum* litigation post-consolidation, *i.e.*, for Civil Action No. 94-T-356-N, are designated as "*Crum* Doc. No". Docket numbers for entries in *Crum* pre-dating consolidation are designated as "*Crum* PC Doc. No."

No. 60).  In the Consolidation Order, the Court specifically stated "***that the pleadings and orders in the above-styled case shall remain binding on the parties to the same extent that they were binding before the transfer***."  *Id*.  (emphasis added).  Thus, at the time of the Consolidation Order, the Court's previous orders striking the respective plaintiffs' jury demands and claims for compensatory and punitive damages (and any other claims for "legal" relief) were carried with the cases as consolidated and made binding upon the parties thereto.

On September 15, 1994, the *Crum* Plaintiffs moved for class certification pursuant to Rule 23(b)(2), FED. R. CIV. P.  (Doc. Nos. 122, 124).  In keeping with their pre-consolidation pleadings, the *Crum* Plaintiffs asserted no claims for monetary damages and otherwise described the equitable remedies they sought as "structural modifications of the selection procedures administered by the Personnel Department and the various agencies and departments of the State utilizing such procedures, as well as structural modifications to the injunctive decrees already entered in *United States v. Ballard*." [5]  *See* Motion for Certification of a Plaintiff Class (*Crum* Doc. No. 124) at ¶2.

**B.     BENNY NEWTON WAS A NAMED REPRESENTATIVE OF THE PUTATIVE CLASS IN *CRUM*.**

While the first class certification motion was pending, the *Crum* Plaintiffs filed intervention motions on behalf of approximately 27 African-Americans, wherein they sought to intervene in the *Crum* litigation for the purpose of asserting claims against the existing *Crum* Defendants and/or

---

[5]  This Court has described the claims of the *Crum* Plaintiffs as follows:

> As a putative class, the *Crum* plaintiffs claim, in part, that they suffer discrimination in layoffs, recalls from layoffs, terminations, discipline, hiring, rehiring, evaluations, compensation, transfers, job-duty assignments, recruitment, screening, selection procedures, denial of promotion, demotions, rollbacks, sick leave, subjective decision-making practices, and other terms and conditions of employment that have allegedly resulted in disparate impact and treatment of the *Crum* plaintiffs and their putative class.

Order (*Crum* Doc. No. 610) at 4.

against additional State agencies. Those proposed intervenors included, among others, Plaintiff Benny Newton. In particular, Newton filed his intervention motion on February 24, 1998. At the time he filed his intervention motion, the putative class representatives had already withdrawn their jury demand and all claims for compensatory and punitive damages. Although the Court granted Newton's intervention motion on May 18, 2007, and converted his action into a separate lawsuit, the *Crum* Plaintiffs specifically had identified Newton as a class representative during the pendency of his intervention motion. In fact, at all times relevant to his intervention motion, the parties treated Plaintiff Newton as a named representative of the putative *Crum* class. *See Crum* Plaintiffs' Class Brief (Doc. No. 607) at 31.

On June 21, 2001, the Court entered an order denying Plaintiffs' original September 15, 1994 class certification motion with leave to renew. (Doc. No. 445). Following the denial of the *Crum* Plaintiffs' original class certification motion, the parties continued to engage in class discovery and deposed Newton as one of several named representatives of the putative class.

On March 17, 2003, the *Crum* Plaintiffs renewed their class certification motion.[6] (*Crum* Doc. No. 606). The putative plaintiff class was defined as "all African-Americans who applied for employment opportunities with the State of Alabama, or would have applied for such opportunities in the absence of the racial discrimination challenged in Defendants' selection procedure." Motion for Cert. of Pls.' Class (*Crum* Doc. No. 606) at 1. In their memorandum of law in support of their class certification motion, the *Crum* Plaintiffs specifically identified Plaintiff Newton as one of 30 putative class representatives, and they provided a detailed description of his specific claims to establish typicality under Rule 23(a), FED. R. CIV. P. *See Crum* Plaintiffs' Class Brief (Doc. No. 607) at 31.

---

[6] In their second class certification motion, the *Crum* Plaintiffs again described the remedies sought as injunctive and equitable relief and, in particular, "structural modifications" to the selection procedures used by the State. (*Crum* Doc. No. 606).

**C.** **PLAINTIFF NEWTON AFFIRMATIVELY AND UNEQUIVOCALLY WAIVED HIS RIGHT TO A JURY TRIAL AND ANY CLAIM FOR COMPENSATORY OR PUNITIVE DAMAGES IN *CRUM* TO PRESERVE THE PUTATIVE PLAINTIFF CLASS IN THE *CRUM* LITIGATION.**

As noted above, during the course of class discovery, the *Crum* Plaintiffs proffered Newton as an additional party and as a named representative of the putative class. Defendants deposed Newton on February 6 and 7, 2002. During his deposition, Newton repeatedly and unequivocally testified that he was aware that he did not have to participate in the *Crum* litigation; that he had a right to file a separate lawsuit for damages; and that he knowingly waived his rights to a trial by jury and to seek compensatory and punitive damages when he elected to intervene in the putative class:

**B. Newton Dep. at Pages 288**:

Q.     Okay. Let me ask you this. Do you have an understanding that your attorneys have waived your right to receive any sort of monetary damages, any sort of monetary award other than back pay?

A.     Yes.

**B. Newton Dep. at Pages 302-03**

Q.     Okay. When you filed the complaint in intervention, did you understand that you had the right to file your own lawsuit and ask for – in addition to back pay and ask for any sort of injunctive relief like being placed in a particular position, you had the right to request compensatory damages, damages in addition to back pay to compensate you for the damage done and that you had the right to seek punitive damages up to perhaps $300,000?

A.     Yes.

Q.     And so you elected to become part of the class, rather than file this separate lawsuit and request compensatory or punitive damages?

A.     Yes.

**B. Newton Dep. at Pages 395-97**:

Q.    Mr. Newton, you understand that you are not claiming compensatory and punitive damages in this case; is that right?

A.    That's correct.

Q.    Is there any reason or reasons why you are not claiming those damages?

A.    I want to continue to be part of the class.

Q.    Any other reasons?

A.    That's it.

Q.    And what's your understanding about why that would enhance your ability to be part of the class?

A.    I'm sorry.  Could you rephrase that?

Q.    Yes.   You said that the reason I'm not claiming compensatory and punitive damages is because you want to continue being part of the class.  I'm asking what's the connection between those two things?  How would that enable you to continue being part of the class?

A.    I'm not asking for any punitive damages.

Q.    Is there anything that would change your mind about that if I had asked about compensatory and punitive damages?

A.    No.

Q.    Any other reason why you're not asking for compensatory and punitive damages?

A.    No.

Q.    Are you aware that you have not asked for a jury trial in this case?

A.    Yes.

8

Q.      What's the reason for not asking for a jury trial?

A.      I think the case could be more served by a judge.

Q.      Why is that?

A.      Just my personal belief.

Q.      Tell me what the basis of your personal belief is.

A.      That I think it would be more served by a judge.

Q.      Do you have any reason to believe that?

A.      That is my reason.

**B. Newton Dep. at Pages 412-13**.

Q.      Mr. Newton, you realize that as a putative class representative, that you are waiving compensatory and punitive damages on behalf of the class that you seek to represent?

A.      Yeah.

Furthermore, Plaintiff Newton specifically described the remedies he sought in *Crum* as equitable in nature, *e.g.*, back pay, reinstatement, *et seq.*  B. Newton Dep., Ex. A at 284-85.

In sum, Plaintiff Newton, acting individually and as a representative of the putative class, knowingly and unequivocally waived his right and the rights of the putative class members to a trial by jury and to seek compensatory or punitive damages.

D.      **THE *CRUM* SPIN-OFF CASES**

In early 2007, the *Crum* Court began creating the "*Crum* Spin-Off" cases by granting numerous intervention motions that had been pending in the *Crum* litigation for many years. Although intervention was granted to approximately 27 named parties, the Court instructed the Clerk of the Court to designate each complaint-in-intervention as a separate lawsuit.  With respect to Plaintiff Newton, the Court granted his intervention motion on May 18, 2007, and

established the instant lawsuit as a separate action.  (Newton Doc. No. 1).  On August 29, 2007,

Defendants filed a Motion to Dismiss for Failure to State a Claim, or in the Alternative, for More

Definite Statement.  (Newton Doc. No. 24).  In order to expedite the matter and conserve judicial

and legal resources, the Court entered an order on August 30, 2007, granting Plaintiff Newton's

motion for leave to amend his Complaint to comply with the requirements of Federal Rules of

Civil Procedure and *Bell Atlantic Corp. v. Twombly*, 550 U.S. ---, 127 S. Ct 1955, 167 L.Ed.2d

929 (2007).

On September 24, 2007, Plaintiff Newton filed an Amended Complaint.  Rather than

merely clarifying the basis of the claims he originally asserted in his complaint-in-intervention in

the *Crum* litigation, Newton asserted a new jury demand and resurrected his previously waived

claims for punitive and compensatory damages.  Plaintiff's First Amended Complaint (Newton

Doc. No. 29) at 11.  On October 2, 2007, Defendants filed their Answer to Plaintiff's First

Amended Complaint.  (Doc. No. 31).

For the reasons set forth below, Plaintiff Newton's newly asserted jury demand and claim

for compensatory and punitive damages are barred as a matter of law.

## III.    ARGUMENT

### A.    PLAINTIFF NEWTON'S JURY DEMAND AND CLAIMS FOR COMPENSATORY AND PUNITIVE DAMAGES ARE BARRED BY THE DOCTRINE OF JUDICIAL ESTOPPEL.

The Court should dismiss Plaintiff Newton's jury demand and his claims for

compensatory and punitive damages because they are barred by the doctrine of judicial estoppel.

"Judicial estoppel bars a party from asserting a position in a legal proceeding that is inconsistent

with its position in a previous, related proceeding."   *U.S. v. Campa*, 459 F.3d 1121, 1152

(11th Cir. 2006).  It is an equitable doctrine that protects the integrity of the judicial process "by

prohibiting parties from deliberately changing positions according to the exigencies of the

moment." *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1340 n.5 (11th Cir. 2003) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)) (internal citations and quotations omitted); *see also Stephens v. Tolbert,* 471 F.3d 1173, 1177 (11th Cir. 2006); *Barger v. City of Cartersville*, 348 F.3d 1289, 1293 (11th Cir. 2003); 18 Moore *et al.*, Moore's Federal Practice § 134-30, at 134-62 to -63 (3d ed. 1997) (noting that the doctrine of judicial estoppel has been applied broadly to prevent a party from adopting inconsistent legal positions in the same or related judicial proceedings).

The circumstances under which judicial estoppel should be invoked are not reducible to a general formulation of principle, but courts have traditionally looked at three factors: (1) whether a later position asserted by a party was clearly inconsistent with an earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Stephens v. Tolbert,* 471 F.3d 1173, 1177 (11th Cir. 2006).   Additionally, the inconsistent positions must be made under oath and must be calculated to make a mockery of the judicial system.  *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001), *vacated on other grounds*, 537 U.S. 1085 (2002) (citing *Taylor v. Food World, Inc*., 133 F.3d 1419, 1422 (11th Cir. 1998)) (additional citations omitted).  There is no requirement, however, that the party invoking judicial estoppel show prejudice.  *See Burnes v. Pemco Aeroplex, Inc*., 291 F.3d 1282, 1286 (11th Cir. 2002).  "Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary."  *Id.  See also Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et*

*al.*, 81 F.3d 355, 360 (3d Cir. 1996).

As established above, and in what can only be described as a cynical attempt by Newton to manipulate the Court, he has attempted to revive his long-waived jury demand and his claims for compensatory and punitive damages. Plaintiff Newton sought to intervene in the *Crum* litigation **after** the *Crum* plaintiffs had withdrawn their monetary damage claims and **after** the Court had granted the various motions filed by the *Crum* plaintiffs to strike their jury demands. Furthermore, "deliberate or intentional manipulation can be inferred from the record." *Burnes,* 291 F.3d at 1287. In the instant case, Newton unequivocally testified under oath that he knowingly and voluntarily elected to intervene in the *Crum* litigation rather than filing a separate, individual action seeking compensatory and punitive damages, *see* B. Newton Dep., Ex. A at 302-03; that he specifically waived his right to a trial by jury and to seek compensatory and punitive damages "to continue to be part of the class", *see id.* at 395-97; and that, as a named representative of the putative class, he waived those same rights on behalf of the absent class members. *Id.* at 412-13.

It can hardly be said that Newton's change in position was inadvertent or that he somehow lacked knowledge of the position he previously asserted repeatedly under oath on his behalf and on the behalf of a putative class. As to motive, Newton voluntarily waived his right to a jury trial and his right to seek compensatory and punitive damages when it inured to his benefit to maintain the putative class and his status as a member and named representative of the class.[7] In fact, the continued assertion of compensatory and punitive damage claims in the *Crum* litigation would have doomed class certification. *See, e.g.*, *Murray v. Auslander*, 244 F.3d 807,

---

[7] Unlike unnamed members of the putative class, named class representatives and named intervenors are actual parties to the litigation. As named parties, they are active participants in the litigation and have actual notice of the decisions they make as fiduciaries on behalf of the absent class members. Therefore, regardless of the outcome of certification in the *Crum* litigation, they are bound by their decisions and actions in the litigation.

812 (11th Cir. 2001); *Rutstein v. Avis Rent-A-Car*, 211 F.2d 1228, 1236 (11th Cir. 2000).[8]  Only after his case was carved out of *Crum* and designated as a separate action did Newton chose to reverse course and attempt to resurrect his jury demand and damage claims.[9]  Thus, Newton clearly has taken inconsistent positions to gain an unfair advantage by seeking to avoid his deliberate and voluntary waiver of his known rights in the *Crum* litigation, a decision essential to preservation of the putative class in the *Crum* litigation.

Second, the *Crum* Court has acted on the procedural decisions made by the *Crum* plaintiffs by allowing them, over the vehement objections of Defendants,[10] to amend their respective complaints to withdraw their claims for compensatory and punitive damages and by granting their respective motions to strike their original jury demands.  *See Tolbert* Doc. No. 44; *Crum* PC Doc. No.  37; *Smith* II Doc. No. 52; *Jennings* Doc. No. 10.  As noted above, Plaintiff Newton was aware of and concurred in this choice of action and, in fact, ratified under oath the decision made on behalf of the putative class members to waive their right to a jury trial and to seek compensatory and punitive damages.  B. Newton Dep., Ex. A at 412-13.  Moreover, Plaintiff Newton's testimony clearly demonstrates that he and his counsel engaged in strategic manipulation by dismissing their compensatory and punitive damages claims and by withdrawing their jury demands in an obvious effort to preserve the putative class.  In fact, when

---

[8]  *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997); *Faulk v. Home Oil Co., Inc. (Faulk I)*, 184 F.R.D. 645, 660 (M.D. Ala. 1999) (following *Allison* and rejecting certification of a (b)(2) class because the putative class members' claims for compensatory and punitive damages made their claims uniquely dependent on subjective and intangible differences of each employee's individual circumstances and which would require individualized proof of actual injury); *Pickett v. IBP, Inc*., 182 F.R.D. 647 (M.D. Ala. 1998) (denying certification of 23(b)(2) class where plaintiffs requested compensatory and punitive damages under Packers and Stockyard Act because they were not incidental to equitable relief sought).

[9]  It is apparent that the Court would not have established the *Crum* Spin-Off cases as separate actions if it intended to certify a plaintiffs' class in the *Crum* litigation.

[10]  Defendants specifically objected to the various motions of the *Crum* plaintiffs to strike their jury demand and their compensatory and punitive damage claims on the basis that those actions were inconsistent with the adequacy of representation requirement of Rule 23, Fed. R. Civ. P. and the fiduciary duty owed by the named representatives to the members of the putative class.  *See, e.g.*, (*Smith* Doc. Nos. 49, 50); (*Crum* Doc. 626).

asked about other money damages to which he believed he was personally entitled, Newton's response clearly illustrates his attempt to hedge his bets:

> Q.    All right.  So I'm asking what else -- what other money damages you think you ought to get personally?
>
> . ….
>
> Q.    Can you answer the question Mr. Newton?
>
> A.    ***At this particular moment***, I'd rather continue to stick to my answer.  I'd rather look out for the class as a whole instead of breaking off separately.

B. Newton Dep., Ex. A at 286-88.  (emphasis added).  Newton's comment that he would stick with his decision to waive his damage claims "[a]t this particular time" is very telling because it portends of things to come, *i.e.*, that Newton might change his position to benefit self-interest.

Furthermore, as demonstrated by their briefs opposing class certification in the related *Crum* litigation, Defendants relied on the testimony of Newton and other named plaintiffs regarding their abandonment of their jury demand and their claims for compensatory and punitive monetary damages.  In fact, Defendants specifically argue that the decision by the named class representatives, including Plaintiff Newton, justified denial of class certification because waiver of their monetary damage claims constituted a violation of their fiduciary duty owed to the absent class members, thus rendering the named plaintiffs unsuitable as representatives of the putative class.  *See* Defs.' Brief Opposing Class Certification (*Crum* Doc. No. 626) at 157-65, 167.  In other words, both the *Crum* Court and Defendants acted on Newton's sworn testimony and affirmative decisions (as well as the sworn testimony and decisions of other named parties in the *Crum* litigation) to abandon their jury demand and their

compensatory and punitive damages claims.[11]

Finally, allowing Newton to assert a position inconsistent with his earlier pleadings and sworn testimony in the *Crum* litigation, when he knowingly and deliberately abandoned those rights for the specific and strategic purpose of preserving the putative *Crum* class, and his ability to benefit as a member of that class, is precisely the type of deliberate manipulation the doctrine of judicial estoppel was intended to prevent, *i.e.*, benefiting from a position, and then, when it becomes more convenient or profitable, retreating from that position later in related or other litigation. Allowing Newton to reassert his jury demand and claims for compensatory and punitive damages would make a mockery of this Court and the Crum court by allowing Newton to change his legal position based on the exigencies of self-interest.

For these reasons, the Court should dismiss or, in the alternative, strike Plaintiff Newton's jury demand and dismiss his claims for compensatory and punitive damages.

**B.    PLAINTIFF NEWTON KNOWINGLY AND VOLUNTARILY WAIVED HIS RIGHT TO A JURY TRIAL AND HIS RIGHT TO SEEK COMPENSATORY AND PUNITIVE DAMAGES.**

As a corollary to the judicial estoppel argument, Newton also waived his right to a jury trial and his right to seek compensatory and punitive damages. A waiver is the intentional relinquishment of a known right. *U.S. v. Lewis*, 492 F.3d 1219, 1222 (11th Cir. 2007); *University Commons-Urbana, Ltd. v. Universal Constructors Inc*., 304 F.3d 1331, 1340-41 (11th Cir. 2002); *In re Baldwin*, 307 B.R. 251, 270 (M.D. Ala. 2004) (quoting *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994)). Unlike the doctrines of estoppel and

---

[11]    Although Defendants clearly have relied and acted upon the decision of Plaintiff Newton and other named representatives of the putative *Crum* class to waive their rights to a jury trial and for monetary damages, such reliance is not required for application of the doctrine of judicial estoppel. Unlike equitable estoppel, judicial estoppel does not require proof of reliance by the parties because the doctrine focuses on the relationship between the court and the chameleonic litigant seeking to manipulate the court by altering his position. It is designed to prevent litigants and their counsel from playing fast and loose with the court and to protect the integrity of the judicial process.

judicial estoppel, however, waiver does not require reliance by either the Court or the opposing party on the actions or conduct of the other party, but rather, only the party's intentional relinquishment of a known right or privilege. *See, e.g., Pitts by and Through Pitts v. American Security Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991) (holding that waiver does not require reliance).

As previously established, Plaintiff Newton's unambiguous and unequivocal sworn testimony establishes that he ratified the decision of his counsel to waive his right to a jury trial and his right to seek compensatory and punitive damages for the specific purpose of pursuing claims as a member and representative of the putative class in *Crum*. B. Newton Dep., Ex. A at 288, 302-03, 395-97, 412-13. Therefore, Newton's jury demand and claims for compensatory and punitive damages are barred by the doctrine of waiver.

**C. PLAINTIFF NEWTON'S JURY DEMAND AND CLAIMS FOR COMPENSATORY AND PUNITIVE DAMAGES ARE BARRED UNDER THE DOCTRINE OF THE LAW-OF-THE-CASE.**

Finally, Plaintiff Newton's attempt to reassert his jury demand and claims for compensatory and punitive damages in this action is barred by the law-of-the-case. Although application of the doctrine is typically discussed in the context of issues decided on appeal, courts have applied it to previous decisions made by the district court in the same or related cases involving the same parties. For example, in *Commercial Union Ins. Co. v. Sepco Corp.*, 300 F. Supp. 2d 1198 (N.D. Ala. 2004), the district court held that, under the doctrine of the law-of-the-case, whatever is established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case. *See also Arizona v. California*, 460 U.S. 605, 618 (1983) (holding that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *Official*

*Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (holding that, although ordinarily the law-of-the-case doctrine forecloses relitigation of issues expressly or impliedly decided by the appellate court, it "also stands to limit a district court's discretion to reconsider its own decisions, in the absence of an intervening change of law, the availability of new evidence, error that must be corrected, or if manifest injustice would otherwise ensue.")[12]   Thus, the doctrine bars relitigation of issues that were decided either explicitly or by necessary implication.  *See United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984) (noting that the primary purpose of the doctrine is to bring an end to the litigation and to protect against relitigation of settled issues).

In the instant case, the *Crum* court previously decided the jury demand and compensatory and punitive damage issues in the related *Crum* litigation, granting the respective motions of the *Crum* Plaintiffs to amend their complaints to abandon their monetary damage claims and to strike their jury demands.  *See e.g.*, *Tolbert* Doc. No. 44; *Crum* PC Doc. No. 37; *Smith I & II* Doc. No. 52; *Jennings* Doc. No. 10.   Additionally, the *Crum* court's Consolidation Order specifically provided "***that the pleadings and orders in the above-styled case shall remain binding on the parties to the same extent that they were binding before the transfer***."  03/24/94 *Crum* Consolidation Order (*Crum* PC Doc. No. 60).  (emphasis added).  Thus, at the time of the consolidation order, the Court's previous decisions striking the respective plaintiffs' jury demands and claims for compensatory and punitive damages (and any other claims for "legal" relief) were carried with the consolidated case and made binding upon the parties thereto. Moreover, as established by Plaintiff Newton's unambiguous testimony, at the time he filed his

---

[12]   Of course, courts have the power to revisit prior decisions of its own or of a coordinate court in any circumstance. However, as noted by the Eleventh Circuit, "as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' " *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1368-70 (11th Cir. 2003).

intervention motion, he was aware that the parties to the *Crum* litigation had waived their right to a jury trial and their right to seek compensatory and punitive damages, and he unequivocally and voluntarily ratified that decision when he acknowledged during deposition that he was waiving those same rights.  B. Newton Dep., Ex. A at 288, 302-03, 395-97, 412-13.  Consequently, allowing Newton to deliberately change his positions after the fact would clearly provide him an unfair advantage and make a mockery of the judicial system.

For this reason, Plaintiff Newton's jury demand and claims for compensatory and punitive damages are barred by the doctrine of the law-of-the-case.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court should dismiss or, in the alternative, strike Plaintiff Newton's jury demand and claims for compensatory and punitive damages.

Respectfully submitted,

 /s/ Christopher W. Weller
CHRISTOPHER W. WELLER (WEL020)
CONSTANCE S. BARKER (BAR099)
MAI LAN F. ISLER (*pro hac vice*)
Attorneys for Defendants

Address of Counsel :

CAPELL &  HOWARD, P.C.
P. O. Box 2069
Montgomery, AL  36102-2069
334/241-8000

/s/ ALICE ANN BYRNE
ALICE ANN BYRNE (BYR015)
Attorney for Defendants
State Personnel Department and
Jackie Graham, Director

Address of Counsel :

STATE PERSONNEL DEPARTMENT
Legal Division
Folsom Administrative Building
64 N. Union Street, Ste. 316
Montgomery, AL  36103
334/242-3451

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document has been electronically filed using the CM/ECF system on this the 10th day of March, 2008.

 /s/ Christopher W. Weller
OF COUNSEL

19

# EXHIBIT "A"

1      IN THE UNITED STATES DISTRICT COURT
2      FOR THE MIDDLE DISTRICT OF ALABAMA
3           NORTHERN DIVISION
4
5  IN RE:
   EMPLOYMENT DISCRIMINATION
6  LITIGATION AGAINST THE
   STATE OF ALABAMA
7        EUGENE CRUM, JR., et al.,
8           Plaintiffs,
9      vs.              CASE NO. CV-94-T-356-N
10       STATE OF ALABAMA, et al.,
11          Defendants.
12
13       * * * * * * * * * *
14       DEPOSITION OF BENNY NEWTON, taken
15  pursuant to stipulation and agreement before
16  Andrea E. Martin and Dee Johnson, Registered
17  Professional Reporters, and Commissioners for the
18  State of Alabama at Large, in the Law Offices of
19  Capell & Howard, 150 South Perry Street
20  Montgomery, Alabama, on Wednesday, February 6,
21  and Thursday, February 7, 2002, commencing at
22  approximately 9:04 a.m.
23       * * * * * * * * * *

1 Q. Do you have close friends in Montgomery?

2 A. Yes.

3 Q. Have you discussed it with them or told them

4    what you're doing?

5 A. No.

6 Q. All right. Have you discussed with any of

7    the other plaintiffs in this lawsuit -- have

8    you discussed this lawsuit or your feelings

9    about this lawsuit with any of the other

10    plaintiffs?

11 A. Robert Smith.

12 Q. Have you attended meetings with other

13    plaintiffs?

14 A. Since when?

15 Q. At any time. Before you filed the lawsuit or

16    during the lawsuit.

17 A. I think there was one meeting.

18 Q. You remember about how long ago that was?

19 A. Many years now.

20 Q. Okay. Tell me what it is that you feel like

21    the court should do for you to make you feel

22    better about what has occurred.

23 A. Equitable compensation, back pay and put into

1    a position that should have been -- that I

2    should have been able to compete for if I

3    qualified for it.

4  Q.  All right.  Do you feel like you have

5    experienced any sort of mental distress from

6    your -- the discrimination that you feel like

7    you have been made to suffer?  Have you lost

8    sleep, have you had to go to a counselor or

9    doctor or psychiatrist?  Have you had to take

10    sleeping pills or anything of that nature

11    related to your lawsuit?

12  A.  Could you clarify?  Are you talking about

13    supported stress?

14  Q.  Well, if you are making any claims in this

15    lawsuit that you have suffered --

16  A.  Yes.

17  Q.  -- mentally.

18  A.  There has been stress, just not supported by

19    a doctor or anything like that.

20  Q.  Okay.  Do you feel like you are entitled to

21    some sort of monetary damages for -- to

22    compensate you for that stress?

23  A.  I want what's best for the class.

1 Q. I appreciate that. Aside from what's best

2    for the class, what do you -- what do you

3    think is best for you?

4 A. To be part of the class.

5 Q. I realize that. But you understand,

6    Mr. Newton, that my interest today is not the

7    class as a whole, but to understand your

8    claims and your position and what you want.

9    And I appreciate your concern for being part

10    of the class, but I need to know if you feel

11    like as far as you personally, what would

12    make things right for you.

13 A. At this point, I'm not willing to break off

14    from the class. As far as what's good for

15    me.

16 Q. Well, I'm not asking you to break off from

17    the class and I appreciate that. But you've

18    told me that you have -- that you think

19    you're entitled to back pay.

20 A. Uh-huh.

21 Q. All right. And that's you personally, right?

22 A. Yes.

23 Q. All right. So I'm asking what else -- what

1    other money damages you think you ought to

2    get personally?

3        MR. CALVIN:  Let me object to that.

4            He's not testified to any money

5            damages that he says he's due.  So

6            I don't want to be -- I know you

7            don't mean to, but I want to make

8            sure he understands and the record

9            understands that he's not

10           testified to any money damages

11           that he claims he's due.

12       MR. WELLER:  I just heard him say he

13           wanted compensation.

14       MR. CALVIN:  Back pay is not money

15           damages.

16       MR. WELLER:  Well, I heard him say

17           compensation and back pay.

18       MR. CALVIN:  Well, you heard something

19           I didn't hear.

20       MR. WELLER:  The record will show what

21           he said.  But if I wants that, I

22           want to know if he wants that.

23  Q.  Can you answer the question, Mr. Newton?

1 A.  At this particular moment, I'd rather

2    continue to stick to my answer.  I'd rather

3    look out for the class as a whole instead of

4    breaking off separately.

5 Q.  Okay.  Let me ask you this.  Do you

6    understand that your attorneys have waived

7    your right to receive any sort of monetary

8    damages, any sort of monetary award, other

9    than back pay?

10 A.  Yes.

11 Q.  And how did you learn about that, that they

12    have waived your right to back pay.

13      MR. CALVIN:  No, we're not --

14 Q.  I'm sorry.  To compensatory damages?

15      MR. CALVIN:  You can be in trouble with

16        the client.

17 Q.  To any kind of damages other than back pay,

18    how did you learn about that?

19 A.  Through reading some of the documents.

20 Q.  And about when was that?

21 A.  I can't recall.

22 Q.  Well, has it been earlier than this past

23    week?

1       MR. CALVIN:  I'm instructing him not to

2              answer any questions which go to

3              the essence of what was

4              communicated or not communicated

5              to him by his lawyer.

6       MS. BARKER:  And your specific

7              instructions not to answer any of

8              the questions --

9       MR. CALVIN:  That question.

10       MS. BARKER:  -- that I've given him.

11   Q.  Let me ask you this, Mr. Newton.  Did you

12      talk to anybody other than Robert Smith

13      before you filed your complaint in

14      intervention?

15   A.  No.

16   Q.  Okay.  When you filed the complaint in

17      intervention, did you understand that you had

18      the right to file your own lawsuit and ask

19      for -- in addition to back pay and ask for

20      any sort of injunctive relief like being

21      placed in a particular position, you had the

22      right to request compensatory damages,

23      damages in addition to back pay to compensate

1    you for the damage done and that you had the

2    right to seek punitive damages of up to

3    perhaps $300,000?

4  A.  Yes.

5  Q.  And so you elected to become part of the

6    class, rather than file this separate lawsuit

7    and request compensatory or punitive damages?

8  A.  Yes.

9  Q.  Okay.  Let me ask you this.  We talked a

10    little bit about your retaliation, EEOC

11    charge.  And I understood you to stay that

12    the basis for that charge was Jamie Gray's

13    behavior towards you.  Are you claiming that

14    anyone in the Department of Conservation,

15    other than Jamie Gray retaliated against you

16    for filing your EEOC charges?

17  A.  In a supportive way the assistant

18    commissioner and the commissioner.

19  Q.  Now, that would be Rick Liles you're talking

20    about when you say assistant commissioner?

21  A.  Yes.

22  Q.  And commissioner, you're talking about Riley

23    Boykin Smith?

1          answered yesterday.

2          MR. ABBOT:  Oh, did y'all talk about

3              that?

4          MR. CHILDS:  Yes.

5          MR. ABBOT:  I'm sorry.

6          MR. CHILDS:  She went over the whole

7              damage outline type of questions.

8          MR. ABBOT:  Off the record.

9              (Off-the-record discussion)

10  Q.  Mr. Newton, you understand that you are not

11      claiming compensatory and punitive damages in

12      this case; is that right?

13  A.  That's correct.

14  Q.  Is there any reason or reasons why you are

15      not claiming those damages?

16  A.  I want to continue to be part of the class.

17  Q.  Any other reason?

18  A.  That's it.

19  Q.  And what's your understanding about why that

20      would enhance your ability to be part of the

21      class?

22  A.  I'm sorry.  Could you rephrase that?

23  Q.  Yes.  You said the reason I'm not claiming

1    compensatory and punitive damages is because

2    you want to continue being a part of the

3    class.  I'm asking what's the connection

4    between those two things?  How would that

5    enable you to continue being part of the

6    class?

7 A.  I'm not asking for any punitive damages.

8 Q.  Is there anything that would change your mind

9     about that if I had asked about compensatory

10     and punitive damages?

11 A.  No.

12 Q.  Any other reason why you're not asking for

13     compensatory and punitive damages?

14 A.  No.

15 Q.  Are you aware that you have not asked for a

16     jury trial in this case?

17 A.  Yes.

18 Q.  What's the reason for not asking for a jury

19     trial?

20 A.  I think the case could be more served by a

21     judge.

22 Q.  Why is that?

23 A.  Just my personal belief.

397

1  Q.  Tell me what the basis of your personal

2      belief is.

3  A.  That I think it would be more served by a

4      judge.

5  Q.  Do you have any reason to believe that?

6  A.  That is my reason.

7  Q.  By any judge or by this particular judge?

8  A.  This judge is fine.

9  Q.  By this particular judge?

10  A.  This judge is fine.

11  Q.  My question is do you think the case would be

12      better served by any judge or by just this

13      particular judge?

14  A.  Judge Thompson.

15  Q.  And I believe your wife also works for the

16      State?

17  A.  That's correct.

18  Q.  In a merit system job?

19  A.  No.

20  Q.  Non-merit system job?

21  A.  Non-merit.

22  Q.  What department?  I'm sorry.  I know you went

23      over this yesterday, but remind me.

1  Q.  How do you know that State Personnel had

2     input or any role or involvement in that

3     decision or that recommendation from the

4     HayGroup?

5  A.  That's based on my belief and what has

6     happened.  I don't have any evidence.

7  Q.  You don't know that one way or the other, do

8     you?

9  A.  I don't have any evidence.

10  Q.  Do you know it one way or the other?

11  A.  I have no evidence.

12  Q.  Yes or no or I don't know or I don't

13     remember.

14  A.  I don't recall.

15  Q.  Do you know?

16  A.  I don't know.

17        MR. ABBOT:  If you'll give me a few

18           minutes, that may be all I have.

19        MR. CHILDS:  Okay.

20        MR. ABBOT:  Why don't we take a break.

21           (Recess from 11:22 a.m.

22              to 11:28 a.m.)

23  Q.  Mr. Newton, you realize that as a putative

1    class representative, that you are waiving

2    compensatory and punitive damages on behalf

3    of the class that you seek to represent?

4  A.  Yeah.

5  Q.  Have you discussed that with any class

6    member?

7  A.  No.

8  Q.  Have you obtained in any way the class's

9    approval for you to waive those compensatory

10    and punitive damages on their behalf?

11  A.  No.

12  Q.  Have you obtained in any sense the approval

13    of any class member to waive the jury trial

14    right?

15  A.  No.

16    MR. ABBOT:  I believe that's all I have

17    today pending receipt of any

18    further documents.  Thank you,

19    Mr. Newton.

20    THE WITNESS:  Thank you.

21    (The deposition concluded at

22    11:29 a.m.)

23  * * * * * FURTHER DEPONENT SAITH NOT * * * * *